UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re

RICHARD DAVID SHAN,

    Debtor.

_____/

Case No. 16-14992-AJC
Chapter 7

**DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER GRANTING CREDITOR'S THIRD MOTION TO ENLARGE TIME TO (1) OBJECT TO DEBTOR'S CLAIMED EXEMPTIONS AND (2) OBJECT TO DEBTOR'S DISCHARGE AND DISCHARGEABILITY OF DEBTS**

Debtor, Richard David Shan, moves this Court for reconsideration of its *Order Granting Creditors' Third Motion for Enlargement of Time to (1) Object to Debtor's Claimed Exemptions and (2) Object to Debtor's Discharge and Dischargeability of Debts* (ECF No. 90) (the "**Third Extension Order**") filed by creditors, Jodi Tartell ("**Tartell**"), Hallandale Village, LLC, Hallandale Crossings, LLC, Hallandale Beach Business Center, LLC, Jo-Ran Properties, LLC, Highland Park Ventures, LLC, 2648 Van Buren, LLC, Seventh Avenue Homes, LLC, and interested party, the Joan Geduld 2002 Family Irrevocable Trust Dated June 11, 2002 FBO Jodi Tartell (collectively, the "**Creditor**"), and states:

**INTRODUCTION**

1.    Bankruptcy Rules 4003, 4004, and 4007 and case law are clear:  a creditor *must* show that it engaged in meaningful discovery *before* the relevant deadlines lapsed and *must* show valid reasons why it was *unable* to comply with those deadlines to satisfy the "for cause" standard for extensions.  It is all about timing and an inability to meet the deadline.  Thus, in determining whether cause exists, the Court cannot consider actions taken *after* the September 19th Deadline lapsed or Creditor's unilateral choice to wait until after the deadline passed to begin its investigation.

2.     At the conclusion of the evidentiary hearing, the Court directed the parties to submit competing orders and ultimately adopted the order submitted by Creditor. However, Creditor's proposed order did not accurately reflect the evidentiary record in this case.  Therefore, the findings and basis for the Court's decision do not accurately reflect the record.  And, the Court must reconsider its ruling.

3.     Creditor's proposed order suggests that actions were taken by Creditor ***prior*** to the expiration of the deadline and that the Debtor's purported lack of cooperation affected their ability to meet September 19th Deadline.  However, the events referenced in Creditor's proposed order refer to activities that occurred ***after*** the deadline expired.  The evidentiary record is clear that Creditor took no action prior to the expiration of the deadline. In fact, the record in this case overwhelmingly proves that Creditor (a) ***<u>never initiated discovery before the September 19th Deadline lapsed,</u>*** and (b) had the ability to comply with the deadline to object to the Debtor's claimed exemptions and to file a complaint objecting to discharge or to determine dischargeability of debts, but unilaterally decided not to comply. And, the record is void of any evidence that the Debtor was uncooperative or acted in bad faith.

4.     Creditor should not be permitted to rely on the Trustee's informal request for documents as a basis for its decision to ignore the deadline.  Among other things, the evidence is clear that Creditor (a) did not request any documents from the Debtor, (b) did not review the Trustee's list of documents or work with the Trustee on the document production, and (c) did not request (from the Debtor or the Trustee) copies of the documents produced by the Debtor to the Trustee prior to the expiration of the September 19th Deadline.  And, significantly, no evidence was presented and no proffers were made to establish that (a) the Debtor was uncooperative, (b) the timing of the Debtor's delivery of the documents to the Trustee delayed Creditor's analysis with respect to the claimed exemptions and discharge/dischargeability issues, or (c) Creditor needed the documents to file a complaint.

5.     Accordingly, the Third Extension Order must be reconsidered as it makes findings and grants a further extension of the deadlines for Creditor to object to the Debtor's

claimed exemptions and to file a complaint objecting to discharge or to determine dischargeability of debts based on information that is inconsistent with the record in this case.

## BACKGROUND

6. On April 6, 2016 (the "**Petition Date**"), the Debtor filed his voluntary petition under Chapter 7 of title 11 of the United States Code. Joel L. Tabas was appointed Chapter 7 Trustee in this case.

7. On April 6, 2016, the Clerk of Court issued the Notice of Chapter 7 Bankruptcy Case, setting the original deadline for creditors to file objections to the Debtor's claimed exemptions on June 3, 2016 (the "**Exemptions Deadline**") and the original deadline for creditors to file objections to the Debtor's discharge and the dischargeability of debt on July 3, 2016 (the "**Discharge Deadline**"). With the Debtor's consent, those deadlines were extended twice establishing a deadline of September 19, 2016 (the "**September 19th Deadline**") (ECF Nos. 40 and 50).

8. Prior to the September 19th Deadline, Creditor took no action to investigate their purported claims against the Debtor.

9. On September 21, 2016 (*2 days after the Deadline*), Creditor filed and served their *Subpoena for Rule 2004 Examination Duces Tecum* (ECF No. 71) on the Trustee. The *Debtor's (I) Objection to the Creditor's Subpoena for Rule 2004 Examination Duces Tecum Served on Joel L. Tabas, Chapter 7 Trustee, and (II) Motion to Quash and for Protective Order in Connection with the Creditor's Subpoena* (ECF No. 75) was filed on October 9, 2016, 3 weeks after the September 19th Deadline passed. The Objection was based, in large part, on the fact that the September 19th Deadline had passed prior to delivery of the Subpoena.

10. On September 21, 2016 (*2 days after the September 19th Deadline*), Creditor filed and served their *Notice of 2004 Examination of Debtor* (ECF No. 72). No prior Notice of 2004 Examination had been served.

11. On October 18, 2016, the Court conducted a preliminary hearing on the Third Extension Motion. An evidentiary hearing was conducted on October 24, 2016, culminating

in the Court's *Order Granting Creditors' Third Motion for Enlargement of Time to (1) Object to Debtor's Claimed Exemptions and (2) Object to Debtor's Discharge and Dischargeability of Debts* (ECF No. 90) dated November 2, 2016.

12. The Court's Order is based on activities that allegedly occurred during the period between the September 19th Deadline and the hearing. Therefore, even taking or accepting as true the facts included in Creditor's Order, the Third Extension Motion should have been denied.

## ARGUMENT

13. Federal Rule of Civil Procedure 59, made applicable to this case by Federal Rule of Bankruptcy Procedure 9023, provides that a reconsideration motion may be granted on four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law.

14. The Third Extension Order must be reconsidered because it is based on manifest errors of fact and to prevent manifest injustice.

15. As this Court is aware, Bankruptcy Rules 4003, 4004, and 4007 provide that extensions of time to object to a debtor's claimed exemptions or to file a complaint seeking a determination that a debtor not receive a discharge or as to the dischargeability of a debt may be granted *only* on a showing of "cause." *In re Carlson*, 380 B.R. 906, 908 (Bankr. S.D. Fla. 2008) (emphasis added).

16. While it is within the discretion of the bankruptcy court to determine whether a party requesting extension of deadlines has satisfied the "for cause" standard under Rules 4003, 4004, and 4007, in making such a determination, courts may only consider (a) actions taken by the creditor *before* expiration of the deadline, and (b) the reasons that creditor was unable to accomplish its investigation within the time allowed under the Bankruptcy Rules. *In re Carlson*, 380 B.R. at 908; *In re Ballas*, 342 B.R. 853, 856 (Bankr. M.D. Fla. 2005), *subsequently aff'd*, 212 Fed. Appx. 867 (11th Cir. 2006); *In re Miles*, 453 B.R. 449, 451 (Bankr.

N.D. Ga. 2011). Courts have ***not*** considered the efforts of another party as cause for a creditor to ignore the deadline, nor have they considered a creditor's choice to save money as cause.

17. The only witness called by Creditor was Joshua Silver, counsel to the Trustee. Mr. Silver testified that (a) he had received documents from the Debtor prior to May 27, 2016, which were not requested by Creditor until after the September 19th Deadline expired, (b) he had requested additional documents from the Debtor, (c) he had not coordinated that request with Creditor, and (d) he did not take any action to render Creditor unable to investigate claims on their own. Specifically, Mr. Silver testified as follows:

> **(i)  Testified that Creditor failed to request documents *before* the September 19th Deadline lapsed:**
>
> **(a)  No documents were requested in May 2016.**

```
 6      Q   I'll restate my question.
 7          So have you reviewed the documents that
 8   were delivered to the trustee by the debtor prior to
 9   the 341 Meeting?
10      A   I reviewed -- when I took over the case on
11   May 27th, or between May 27th to June 3rd, the first
12   thing I did was open the file, and there were
13   documents in there. When they were produced, I do
14   not know.
15      Q   So when you took over on May 27, 2016, the
16   debtor had already produced documents to the trustee
17   prior to that date? Is that your testimony?
18      A   Yes.
19      Q   When you took over the case in May, did
20   the Tartell Group ask you for copies of the
21   documents that had been produced to date?
22      A   They did not ask me personally, no.
```

October 24, 2016 Hr'g Tr. 21:7 – 21:22.

> **(b)  No documents were requested in June 2016.**

```
23      Q   Did the Tartells ask you in June for
24   documents that you had received up to that point?
25      A   Not to my recollection.
```

Hr'g Tr. 21:23 – 21:25.

> **(c)  No documents were requested in July 2016.**



```
1     Q   Did the Tartells ask you in July of 2016
2   if they could have copies of documents produced by
3   the debtor up to that point?
4     A   In which month?
5     Q   In July, did the Tartells ask you for
6   copies of documents that you had received up to that
7   point?
8     A   Not to my recollection.
```

Hr'g Tr. 22:1 – 22:8.

### (d) No documents were requested in August 2016.

```
9     Q   And in August, did the Tartells ask you
10  for copies of documents that you had received prior
11  to that date?
12    A   Not to my recollection.
```

Hr'g Tr. 22:9 – 22:12.

### (ii) Testified that Creditor did not coordinate document request with the Trustee:

```
22    Q   Did we have any conversations about
23  conducting joint document requests?
24    A   No.
```

Hr'g Tr. 26:22 – 26:24.

### (iii) Testified that the Trustee and his counsel have not impeded Creditor or their counsel's ability to conduct their own investigation of the Debtor's assets and financial condition:

```
10    Q   Do you believe that you somehow prevented
11  the Tartells from conducting an investigation of
12  their own into the debtor? Did you render them
13  unable to investigate?
14    A   Did I personally render them unable?
15    Q   Yes.
16    A   I believe that would be a question better
17  answered by the Tartells, if they believe I did so.
18  It's my belief that I don't believe I've done such a
19  thing, but obviously, they may believe otherwise.
```

Hr'g Tr. 25:10 – 25:19.



18.     The Creditor provided no other evidence, except for certain emails that reflect Creditor's requests for further extensions of the deadlines.

19.     There was *no evidence* of (a) an impediment to Creditor's ability to investigate claims or file an objection, (b) a lack of good faith on the part of the Debtor, (c) efforts by Creditor to obtain documents sooner than they did, (d) a need by Creditor to have the documents prior to filing a complaint or objection, (e) any due diligence conducted by Creditor prior to the September 19th Deadline.  In other words, there was no evidentiary basis even offered to justify cause.

20.     The Third Extension Order contains factual findings that have no evidentiary basis as follows:

> "While the Creditors were engaged in litigation with the Debtor prior to the filing of the bankruptcy case, the Court finds, based on the testimony of Debtor's counsel, that the Creditors are still entitled to additional information from the Debtor to determine whether cause exists to object to his discharge or the dischargeability of debts. Without access to the documents requested from the Debtor, the Creditor did not have sufficient information to file an objection."[1]

> "Finally, the Court, having reviewed the emails between counsel for the Creditors and counsel for the Debtor admitted into evidence, finds that the Creditors exercised diligence in appearing at the 341 Meeting to examine the Debtor and then continuing to communicate with both the Trustee's counsel and the Debtor's counsel regarding the efforts to coordinate discovery."[2]

> "Here, the testimony of both the Trustee's counsel, Joshua Silver, and the Debtor's counsel, Linda Worton Jackson, established that

---

[1] Creditor presented no evidence and made no proffers to establish that Creditor requested documents before the September 19th Deadline lapsed, that the Debtor failed to comply with that request or was otherwise uncooperative or that they needed the documents or other information to file an objection.

[2] Creditor introduced and the Court admitted email communications into evidence as Exhibit 1.  However, those email communications contain no evidence of communications with respect to the 341 Meeting or coordinating discovery with the Debtor.



> the Trustee did not receive the Debtor's documents responsive to the Trustee's requests until September."[3]

21. The following factual findings refer to purported activities that occurred *after* the September 19th Deadline, and cannot be considered in a determination of cause.

> "Further, the Debtor objected to the Creditors' requests for those same documents. While this court has since overruled those objections, the Creditor has not yet been given access to the documents."

> "Indeed, the Trustee has requested further enlargement of the deadlines through and including January 16, 2017."

22. The findings identified in paragraphs 20 and 21 above constitute manifest error. As a result of the erroneous findings, the Court granted the Motion when other courts have denied requests for extension based on cases where the creditor or trustee actually did take steps to conduct due diligence prior to September 19th Deadline.

23. To cite but a few examples, in the case *In re Carlson*, the bankruptcy court denied the trustee's further request for extension of deadlines where the trustee had conducted a 2004 examination of the debtor and requested numerous documents and information that had not been provided by the Debtor prior to the expiration of the deadline. The Honorable John K. Olson stated that "it is difficult to fathom how informal discovery requested . . . as to which no formal request to produce or motion seeking to compel production has been filed-could constitute "cause" for further extensions . . . Judge Olson observed that "[t]he Debtor's alleged failure to produce documents informally requested seven months ago is the sole 'cause' alleged by the Trustee for the extensions now sought." And denied the request for extension, holding that no legally sufficient showing of "cause" had been made by the trustee, who has the burden of showing "cause" for the extension of the relevant deadlines.

---

[3] There was testimony that the Trustee received documents both prior to May 27, 2016 and in September 2016. However, no evidence was presented and no proffers were made to establish that the delivery of the documents had any effect on Creditor's ability to file a complaint.



24.     Here, Creditor did not even request documents or conduct a deposition prior to the September 19th Deadline.

25.     Going further, in *In re Ballas*, 342 B.R. 853, 856 (Bankr. M.D. Fla. 2005), the creditor group argued, among other things, that the debtor failed to cooperate with their discovery efforts, and as a result of such protraction, the court should extend the deadline to file a complaint objecting to discharge and/or dischargeability. The *Ballas* court denied the extension request and observed that the creditor group *did not initiate* any discovery. *Id*. The court further stated that *even assuming arguendo* that the debtor did in fact delay the creditor group's discovery in the corporate bankruptcy case, the debtor's failure to be forthcoming in that case does not establish cause to extend the time to object to discharge and/or dischargeability in his personal bankruptcy case, given the fact that no discovery in the personal bankruptcy case had been *initiated* prior to the filing of the extension request. *Id*. The *Ballas* Court noted that whether the creditor exercised diligence with respect to discovery is of most importance, as many courts now require the creditor to establish at least a reasonable degree of due diligence to be accorded the requested extension. *Id*.

26.     In the case at bar, the Trustee's counsel testified that the Debtor has fully cooperated with the Trustee and responded to the Trustee's requests for documents and information at every stage of this case.  At no time did the Trustee's counsel testify that the Debtor has been unreasonable or acted in bad faith.  Even assuming the Debtor was unable to provide documents to the Trustee prior to September 19th Deadline, the Debtor's responses to the Trustee do not justify a delay by Creditor, particularly where Creditor has not presented any evidence showing that they *initiated* discovery or took any action to request documents directly from the Debtor, to compel the Debtor's production of documents in response to the Trustee's informal document request, or to schedule the Debtor's 2004 examination and serve a document request related thereto.

27.     As the record reflects, Creditor did not serve their *Subpoena for Rule 2004 Examination Duces Tecum* (ECF No. 71) until September 21, 2016 – ***after the September 19th Deadline lapsed***.  That so, the timely objections raised in *Debtor's (I) Objection to the Creditor's*

*Subpoena for Rule 2004 Examination Duces Tecum Served on Joel L. Tabas, Chapter 7 Trustee, and (II) Motion to Quash and for Protective Order in Connection with the Creditor's Subpoena* (ECF No. 75) is irrelevant and should not have been considered by the Court.  The Objection had no impact at all on their ability to meet the Deadline.

28.    Creditor's lack of due diligence is fatal to their request for extension of deadlines.  In fact, the record in this case overwhelmingly leads to the conclusion that Creditor **never initiated discovery *before* the September 19th Deadline lapsed**.

## CONCLUSION

29.    Based on the fact that the Order contains factual findings inconsistent with the evidentiary record and a ruling based on those erroneous findings, and based on the fact that both the timeline reflected in the Court docket and the evidentiary record in this case reflect that Creditor made a decision to initiate discovery only ***after*** the September 19th Deadline lapsed, the Third Extension Order must be reconsidered and reversed.

**WHEREFORE**, Debtor, Richard David Shan, respectfully requests that the Court reconsider the *Order Granting Creditors' Third Motion for Enlargement of Time t (1) Object to Debtor's Claimed Exemptions and (2) Object to Debtor's Discharge and Dischargeability of Debts*, and grant such other and further relief as the Court deems just and proper.

Dated:  November 16, 2016          Respectfully submitted,

**SALAZAR JACKSON, LLP**
*Counsel for Debtor, Richard David Shan*
2000 Ponce de Leon Boulevard, Penthouse
Coral Gables, FL  33134
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Jackson@SalazarJackson.com

By:         /s/  Linda Worton Jackson
            Linda Worton Jackson
            Florida Bar No. 843164



## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF on those parties who are registered to receive notices electronically in this case.

                                                      */s/ Linda Worton Jackson*
                                                     Linda Worton Jackson

**SERVICE LIST**

**Electronic Mail Notice List**

- **Jeffrey P. Bast**   jbast@bastamron.com, jdepina@bastamron.com;kjones@bastamron.com;jmiranda@bastamron.com;dtimpone@bastamron.com;mdesvergunat@bastamron.com
- **Paul J. Battista**   pbattista@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com
- **Connie J Delisser**   cdelisser@mlg-defaultlaw.com, mlgfl-bk@mlg-defaultlaw.com
- **Hayley G Harrison**   hgerson@bastamron.com, jmiranda@bastamron.com;dtimpone@bastamron.com
- **Linda W Jackson**   jackson@salazarjackson.com, Salazar@SalazarJackson.com;Cloyd@SalazarJackson.com;Aguilar@SalazarJackson.com;Davila@SalazarJackson.com;Lee-Sin@SalazarJackson.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Joshua D Silver**   jsilver@tabasfreedman.com, jcepero@tabasfreedman.com
- **Jeffrey R Sonn**   jsonn@sonnerez.com
- **Joel L Tabas**   JLT@tfsmlaw.com, kborrego@tabasfreedman.com;jtabas@ecf.epiqsystems.com
- **Joel L Tabas**   jtabas@tabasfreedman.com, jcepero@tabasfreedman.com;kborrego@tabasfreedman.com